In re Voluntary Assignment of Brumer: Industrial Commission, Appellant, vs. United States of America, Respondent.*

*February 20—March 29, 1948.*

\* Motion for rehearing denied, with $25 costs, on September 28, 1948.

426

For the appellant there was a brief by *Stanley Rector*, chief counsel, and *W. H. Putnam*, assistant, and oral argument by *Mr. Putnam*.

For the respondent there was a brief by *Theron Lamar Caudle*, assistant attorney general of the United States, *Sewall Key, George A. Stinson*, and *Homer R. Miller*, special assistants, *Timothy T. Cronin*, United States attorney, and *Howard W. Hilgendorf*, assistant United States attorney, and oral argument by *Mr. Miller*.

ROSENBERRY, C. J.    No question is raised as to the validity of the appellant's lien.    The respondent contends that it is entitled to the entire fund by virtue of priority rights granted to it under sec. 191, 31 USCA, Money and Finance, sec. 3466, U. S. R. S.    The section is as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."    Sec. 3672, 26 USCA, Int. Rev. Code, sec. 3186, U. S. R. S. provides: "Such lien shall not be valid as against any mortgagee . . . [the lien referred to is created by sec. 3670] until notice thereof has been filed by the collector—(a) *Under state or territorial laws.*    In accordance with the law of the state or territory in which the property subject to the lien is situated, whenever the state or territory has by law provided for the filing of such notice."

Sec. 74.76, Wis. Stats. 1945, provides for the filing of notices of liens for internal revenue taxes payable to the United States of America. In this case the respondent does not claim by virtue of the provisions of sec. 3672, U. S. R. S., but under the provisions of sec. 3466, already set out. The respondent argues that assuming that the commission (appellant) has a valid lien which attached to debtor's real estate prior to the assignment such lien was not sufficiently specific to divest the government of its priority under sec. 3466. Consequently, the government is entitled to that portion of the fund derived from the sale of the real estate. The decision of the question under consideration depends upon whether the lien of the appellant is "sufficiently specific and perfect" to overcome the provisions of sec. 3466. If it is not sufficiently specific the United States is entitled to that portion of the fund derived from the sale of the real estate.

In the case of *Illinois v. Campbell,* 329 U. S. 362, 67 Sup. Ct. 340, 91 L. Ed. 348, while the facts are not parallel the precise question presented here was involved, and it was there held that a notice of lien for state unemployment compensation taxes under the Illinois statutes creating a lien upon all the personal property of an employer used by him in connection with his business was not sufficiently specific to divest the United States of its priority under sec. 3466. The statute under which Illinois claimed it was entitled to lien provided: "A lien is hereby created in favor of the director upon all the personal property or rights thereto owned or thereafter acquired by any employer and used by him in connection with his trade, occupation, profession or business, from whom contributions, interest or penalties are or may hereafter become due. Such lien shall be for a sum equal to the amount at any time due from such employer to the director on account of contributions, interest and penalties thereon. Such lien shall attach to such property at the time such contributions, interest or penalties became, or shall hereafter become, due." Jones,

Ill. Stats. Anno. (1944), sec. 45.154 (a). In that case, as in this, the property was in the hands of a receiver, but the United States supreme court held that the appointment of a receiver was only an initial step in the perfection of the lien. That it was not a final assertion or attachment of rights to specific property, as is, for example, the enforcement of a judgment by execution and levy. The state, on the other hand, claimed that the recording of the notices of lien, together with the appointment of the receiver, resulted in the required specificity and perfection. The court said (329 U. S. 362, 374):

"It has never been sufficient to show merely a general lien, effective to protect the lienor against others than the government, but contingently on taking subsequent steps either for giving public notice of the lien or for enforcing it. . . . The federal priority is not destroyed by state recording acts any more than by state statutes creating or otherwise affecting liens, if the lien as recorded or otherwise executed does not have the required degree of specificity and perfection. Under the decisions the test is not, and cannot be, simply whether by his taking further steps the lienor's rights will be enforced against others than the government. The long-established rule requires that the lien must be definite, and not merely ascertainable in the future by taking further steps, in at least three respects as of the crucial time. These are: (1) The identity of the lienor; . . . (2) the amount of the lien; . . . and (3) the property to which it attaches. . . . It is not enough that the lienor has power to bring these elements, or any of them, down from broad generality to the earth of specific identity. In this case the identity of the lienor was made certain, before the government's priority attached, both by the statute and by the notices of lien. The latter also fixed the amounts of the liens, though miscalculated. But neither the notices of lien nor the appointment of the receiver made definite and certain the property, as we have shown. . . . To permit the recording of the notices or the receiver's appointment, or both, in circumstances like these, to overcome the government's priority would be in substance to overrule the numerous decisions cited in which liens no less 'specific and perfected' have been held impotent for that purpose. It would open the door, too, we think, to substantial nullification of

the government's priority. For then this could be accomplished simply by recorded notices of lien, disclosing claims to property not segregated from the debtor's general estate; designated only by general words of classification, including after-acquired property as here; and ascertainable definitely only by further procedures. Congress alone should make such a change, if it should be made at all."

Justices REED and JACKSON dissented from the conclusion of the court on the ground that in the Illinois case the lien was sufficiently specific. That a judgment lien is not sufficiently specific see *United States v. Texas*, 314 U. S. 480, 485, 62 Sup. Ct. 350, 86 L. Ed. 356.

Appellant endeavors to escape the application of the Illinois case on the ground (a) that there are material differences between the Illinois Unemployment Compensation Act and the laws of Wisconsin, (b) that the facts of the two cases are widely divergent, and (c) that there are critical differences between the Illinois lien statute and Wisconsin's judgment statute. There is no dispute that as against others than the United States government the lien for unpaid unemployment compensation contributions in Wisconsin and that created by the Illinois unemployment act are good.

If we follow the decision in the Illinois case we can come to no other conclusion than that the lien created in favor of the appellant by the filing of the tax warrant is not sufficiently specific and perfect to defeat the rights of the respondent under the provisions of sec. 3466, U. S. R. S. Nor are the rights of the appellant enlarged by reason of the stipulation or agreement into which it entered with the receiver by which its lien was released from the lands owned by Brumer. The respondent was not a party to the stipulation and its rights as against the fund are the same as its rights would have been against the land itself. As we understand the decision in the Illinois case, in order to defeat the respondent's claim under sec. 3466 the lien must have been made definite and certain in the three respects named prior to the time the voluntary

assignment was made. To quote, "it is not enough that the lienor has power to bring these elements, or any of them, down from broad generality to the earth of specific identity." In this case an execution on the appellant's judgment had been issued, and the sheriff made return "That after due and diligent search and inquiry I cannot find any goods, chattels, or real estate within my county." It would seem that the efforts of the appellant to give its claim for lien the requisite specificity and perfection had failed. If the sheriff had seized the property in question upon execution an entirely different question would be presented.

The lien claimant must do something amounting to a sequestration of the property against which he seeks to enforce his lien in order to give it the required specificity. It is not enough that a general or blanket lien *may* by additional steps be made specific, the necessary steps must have been taken before the property passed into the hands of the receiver.

*By the Court.*—Judgment affirmed.

The following opinion was filed September 28, 1948:

ROSENBERRY, C. J. *(on motion for rehearing).* In this case the appellant moved for rehearing upon the following propositions:

1. The appellant being a judgment creditor, it is entitled to the protection afforded that class of creditors by sec. 3672, 26 USCA, Int. Rev. Code, sec. 3186, U. S. R. S.

2. If the appellant is not a judgment creditor, then sec. 3672 does not apply, but the court is respectfully requested to indicate what defect in the Wisconsin statute. sec. 108.22 (2), precludes a resulting judgment creditor status and the application of sec. 3672.

We shall consider the second question first. In the opinion filed in this case it was assumed that the appellant was a judgment creditor pursuant to the provisions of sec. 108.22 (2), Wis. Stats. It was held that the claim of a judgment creditor must have the requisite degree of specificity, and cited the case

of *United States v. Texas,* 314 U. S. 480, 62 Sup. Ct. 350, 86 L. Ed. 356, to sustain that proposition.

It is true that *United States v. Texas, supra,* did not deal with a judgment creditor, but it did deal with a lien created by the statutes of the state of Texas, which provided that all gasoline taxes "shall be a preferred lien, first and prior to any and all other existing liens, upon all of the property of any distributor, devoted to or used in his business as a distributor," nor does it deal with the provisions of sub. (a) of sec. 3672, which provides: *"Invalidity of lien without notice.* Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or. judgment creditor until notice thereof has been filed by the collector," but it does deal with liens and cites cases which deal with judgment creditors.

In *Thelusson v. Smith,* 2 Wheat. 396, 4 L. Ed. 271, the claimant was a judgment creditor. The court held, as stated in the syllabus:

"A judgment gives to the judgment creditor a lien on the debtor's lands, and a preference over all subsequent judgment creditors, but the law defeats the preference in favor of the United States in the cases specified in the act of 1799, ch. 128, sec. 65."

This is now sec. 3466, U. S. R. S., sec. 191, 31 USCA. It was said in *United States v. Texas, supra,* p. 485, citing *Thelusson v. Smith, supra:*

"That a general judgment lien upon the lands of an insolvent debtor does not take precedence over claims of the United States unless execution of the judgment has proceeded far enough to take the land out of the possession of the debtor."

In *Brent v. Bank of Washington,* 10 Peters, 596, 9 L. Ed. 547, it was held that sec. 65 (now sec. 3466) operates to give the United States a priority as against a judgment creditor.

Appellant refuses to recognize that the conflict in this case is not between the United States as a lien claimant and the appellant as the holder of a judgment lien, but relates solely to the question whether in an insolvency proceeding other than

one in bankruptcy under the federal act a debt of the United States has priority over other debts of the insolvent, including those owing to a judgment creditor who has taken no steps to make his judgment attach to specific property of the insolvent. There can be no question that a judgment is a debt. *Toth v. Toth,* 242 Mich. 23, 217 N. W. 913, 56 A. L. R. 839. Taxes due to the United States are debts within the meaning of sec. 3466, already set out. *Price v. United States,* 269 U. S. 492, 46 Sup. Ct. 180, 70 L. Ed. 373.

In *United States v. Remund,* 330 U. S. 539, 544, 67 Sup. Ct. 891, 91 L. Ed. 1082, the United States supreme court said:

"Only the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of sec. 3466. In this case, as in that, we think such inconsistency is wholly wanting."

So in this case the claim of the appellant being a debt, the debt due the United States having a priority over it in an insolvency proceeding, under the provisions of sec. 3466, we adhere to our former conclusion.

*By the Court.*—Motion for rehearing denied, with $25 costs.